1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4

**JULISSA APONTE RIVERA,**

**Plaintiff,**

5

**v.**                                                              **Civil No. 07-1950 (GAG)**

6

**DHL SOLUTIONS (USA), et al.,**

7

**Defendants.**

8

**OPINION AND ORDER**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        Plaintiff Julissa Aponte Rivera brought this action against her former employer DHL

Solutions, Inc., Insurance Company ABC, John Doe, and Company XYZ pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and Local Laws 17, 29, and 100, P.R. Laws

Ann., tit. 29, §§155 et seq., 1321a et seq., 146 et seq., respectively, claiming gender-based

discrimination and hostile work environment (Docket No. 2).  Defendants moved for summary

judgment (Docket No. 23) pursuant to Fed.R.Civ.P. 56.  In their motion for summary judgment they

argue: (a) that plaintiff has failed to establish a *prima facie* claim of discrimination inasmuch as she

was never subject to any adverse employment action and her failure-to-promote claim is time-barred;

(b) that plaintiff cannot establish that she was subjected to a hostile work environment because the

complained-of conduct was not sufficiently severe or pervasive so as to alter the conditions of her

employment and create an abusive working environment; (c) that  there is no basis for employer

liability; and (d) that given that there are no federal claims upon which relief may be granted, the

supplemental state law claims should also be dismissed.  After reviewing the pleadings, the court

**GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment (Docket

No. 23).

24

        **I.        Relevant Factual Background**

25

26

27

        Plaintiff Julissa Aponte Rivera ("Aponte")  started working for defendant DHL Solutions,

Inc. on March  6, 2000 as a Service Center Assistant at the spare  parts center in San Juan.  On July

7, 2001, plaintiff was promoted to the position of Material Handling Supervisor, although she states

28

**Civil No. 07-1950 (GAG)**

1   that the promotion was to Logistics Manager for Puerto Rico and the Caribbean. Plaintiff claims to

2   have had an excellent relationship with all of her supervisors. Enrique Frías ("Mr. Frías") became

3   Aponte's supervisor in June 2004, the time when the claimed-of sexual harassment began. Plaintiff's

4   first complaint to Human Resources, in June 2004, was that her supervisor was creating an

5   "uncomfortable" working environment by making several comments to her that were out of place

6   because they had sexual connotations.  Plaintiff also informed DHL that the workload assigned to

7   her was impossible to accomplish. To this  Mr. Frías answered "women is [sic] always complaining

8   about everything." (Docket No. 23-6 at 12).  A position for Program Manager became available in

9   October 2004. Aponte expressed interest in the position and alleges to have had the necessary

10  experience to have qualified for the same.  Nevertheless, at the November interview with Mr. Frías,

11  plaintiff felt rushed and as though the interview was only *pro forma* because of insinuations that

12  Rafael Camacho ("Mr. Camacho") would be hired as Program Manager. After this incident, plaintiff

13  took a ten-month leave of absence from January to November 2005. Upon her return, she found her

14  computer and  office occupied by Mr. Camacho  and felt that the harassment immediately worsened.

15  Plaintiff felt humiliated and that her authority and position was diminished in front of those she was

16  supervising. Aponte participated in daily conference calls with clients and Mr. Camacho and she felt

17  that she was constantly harassed during these conference calls (Docket No. 23-6 at 41).  In March

18  2006 she complained to DHL for the second time of the hostile work environment caused by Mr.

19  Frías and Mr. Camacho and plaintiff took another leave of absence because the working environment

20  became intolerable. In June 2006, plaintiff resigned from her employment and filed a Charge of

21  Discrimination before the Equal Employment Opportunity Commission ("EEOC") (Docket 2 at 3).

22          **II.      Standard of Review**

23          Summary Judgment is appropriate when "the pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

25  genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

26  of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "An issue is

27

28                                                          2

**Civil No. 07-1950 (GAG)**

1  genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

2  'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

3  v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

4        The moving party bears the initial burden of demonstrating the lack of evidence to support

5  the non-moving party's case. Celotex, 477 U.S. at 325. The non-moving party must then "set forth

6  specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds

7  that some genuine factual issue remains, the resolution of which could affect the outcome of the

8  case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.

9  242, 248 (1986). When considering a motion for summary judgment, the court must view the

10  evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party

11  the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment

12  stage, the court does not make credibility determinations or weigh the evidence. Id.

13        **III.    Analysis**

14        **A.    Failure-to-Promote Claim**

15        In a sex discrimination claim under Title VII of the Civil Rights Act of 1964 the plaintiff

16  bears the burden of proving her *prima facie* case through a four-prong test. Texas Dept. of

17  Community Affairs v Burdine,450 U.S. 248, 253 (1981) (citing McDonnell Douglas v. Green, 411

18  U.S. 792(1973)). If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the

19  defendant so as to demonstrate a non-discriminatory reason for the employee's rejection or denial.

20  Id. "The *prima facie* case serves an important function in the litigation: it eliminates the most

21  common non-discriminatory reasons for the plaintiff's rejection." Id. at 254.

22        The Supreme Court has held that for a plaintiff to establish a presumption of gender

23  discrimination, she must show that (1) she is a member of a protected class; (2) an adverse

24  employment action was taken against her; (3) she was otherwise qualified; and (4) her position

25  remained open or was filled by a person with qualifications similar to hers. García v Brystol-Myers

26  Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008). As a woman claiming gender-based discrimination,

27  Plaintiff satisfies prong 1. The court will address prongs 2, 3, and 4 in its analysis.

28                                        3

**Civil No. 07-1950 (GAG)**

1      Defendant argues that plaintiff failed to establish a *prima facie* case of gender discrimination

2   because she did not suffer an adverse employment action and, in the alternative, the failure-to-

3   promote claim is time-barred (Docket No. 24 at 7).  Plaintiff contests in her Opposition to Defendant

4   DHL's Summary Judgment (Docket No. 34 at 5) that the adverse employment action manifested

5   itself in the form of a constructive discharge.  "A constructive discharge usually occurs as a result

6   of sexual harassment that took place in violation of Title VII." Johanna Zayas v. Frank Torres-

7   Oquendo, et al, 2009 WL 1473506, *5 (D.P.R. 2009). Therefore, the court opines that the

8   constructive discharge, as one that occurs "when the employer makes working conditions so

9   intolerable that a reasonable employee would feel compelled to resign," Hunt v. Rapides Healthcare

10  Systems, LLC, 277 F.3d 757, 771 (5th Cir. 2001), is not representative of the required adverse

11  employment action for a sex discrimination case based on a failure to promote.

12      When a  failure-to-promote claim constitutes the adverse employment action, the elements

13  of the *prima facie* claim vary depending on the nature of the claim. Therefore, in order to prove her

14  failure-to-promote claim, plaintiff must establish "(1) that she is a member or a protected class who

15  (2) was qualified for an open position for which she applied, but (3) was rejected (4) in favor of

16  someone possessing similar qualifications." Rathbun v Autozone, Inc., 361 F.3d 62, 71 (1st Cir.

17  2004). In light of the relevant facts of the case, the court finds  that with regards to prongs 2 and 4,

18  there are genuine issues of material fact because plaintiff offers evidence showing that she met the

19  necessary qualifications for the job and that she had similar qualifications to the person hired

20  (Dockets No. 34 at 8-10 and 23-5 at 25-26). On the other hand, defendant alleges that Aponte did

21  not meet the professional standards to qualify (Docket No. 24 at 9-11). The court would, for this

22  reason, deny summary judgment. However the court must first address defendant's argument  with

23  respect to the failure-to-promote claim being time-barred.

24      Plaintiff raises the continuing violation doctrine which allows the court to consider events

25  that took place outside the statutory period "as long as the untimely incidents represent an ongoing

26  unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 107

27

28                                                      4

**Civil No. 07-1950 (GAG)**

1  (2002). Nevertheless, a failure-to-promote is a discrete act and discrete acts have to fall within the

2  statutory period in order for a plaintiff to recover for them. Id.  The Supreme Court held in Morgan

3  that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts

4  alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges."

5  Id. at  113.  Plaintiff filed a Charge of Discrimination against defendant before the EEOC on June

6  26, 2006, alleging discrimination and hostile work environment because of her gender. According

7  to the Amended Complaint (Docket No. 2 at 4), the position for DHL Program Manager became

8  available in October 2004.  Plaintiff was interviewed on November 12, 2004 and was told by Mr.

9  Frías that the position would be filled by the afternoon of that same day.  The charges must be filed

10  with the EEOC within **300 days** of the employment practice.  Morgan, 536 U.S. at 107 (citing

11  TitleVII of the Civil Rights Act of 1964, 42 U.S. C. s 2000e-5(e)(1)). It is evident to the court that

12  the 300-day statutory period had elapsed by the time plaintiff filed a charge before the EEOC.

13  Therefore, the court  concurs with defendant's argument and finds that the failure-to-promote claim

14  is time-barred.  The court, therefore, **GRANTS** summary judgment as to the sex discrimination

15  claim.

16          **B.      Hostile Work Environment Claim**

17          In order to succeed in a hostile work environment claim, the plaintiff must establish: (1) that

18  she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment;

19  (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or

20  pervasive so as to alter the conditions of plaintiff's employment and create an abusive work

21  environment; (5) that the sexually objectionable conduct was both objectively and subjectively

22  offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did

23  perceive it to be so; and (6) that some basis of employer liability has been established.  O'Rourke

24  v City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).  As a woman, plaintiff is a member of a

25  protected class and satisfies prong 1.  As for prongs 2 and 3, plaintiff has alleged and presented

26  evidence that she was subjected to unwelcome harassment and that it was based on sex (Docket Nos.

27

28                                              5

**Civil No. 07-1950 (GAG)**

1  23-6 at 10, 17, 25, 32, and 41-44). The court's analysis will, therefore, be limited to prongs 4, 5, and
2  6.

3       Title VII  is violated when the work environment is charged with ridicule, insults, and
4  discriminatory intimidation "sufficiently severe or pervasive to alter the conditions of the victim's
5  employment and create an abusive working environment." Miguel v. Nesco Redondo, S.E., 394
6  F.Supp. 2d 416, 425 (D.P.R. 2005).  Plaintiff states that she had excellent evaluations from her
7  supervisors up until 2004, when Mr. Frías started supervising her (Docket No. 2-3 at 4).  Plaintiff
8  further claims that when Mr. Frías began working as supervisor the working environment turned
9  hostile and uncomfortable due to unwelcome sexual harassment, such as telling her things like
10  "When will you demonstrate that you have control of the operation? Is it that you don't have pants
11  on tight?" (Docket No. 23-6 at 14), asking her if she was married and afterwards telling her that she
12  was "expecting a man like [him]" (Docket No. 23-6 at 20), asking her to go to a party with him
13  (Docket No. 23-6 at 22), and calling her "weak" or telling her she complained too much (Docket No.
14  23-6 at 28). Defendant argues that Mr. Frías could not have created a hostile work environment since
15  he visited Puerto Rico five times in one year.  Aponte narrates that Mr. Frías harassed her following
16  six specific events and that his behavior extended from June to December of 2004 (Docket No. 23-4
17  at 2-29).  Therefore, the six events occurred in a six-month time span, after which she took a ten-
18  month leave of absence from January to November 2005 (Docket No. 23-6 at 4).

19       Further, upon plaintiff's return, she believed that the "pressure" would have subsided,
20  nevertheless, it worsened due to Mr. Camacho's conduct.  Aponte states that both him and Mr. Frías
21  met with her and "in a loud tone said something like 'When are you going to leave?'" (Docket No.
22  23-6 at 40).  Also, Mr. Camacho would constantly refer to her and women in general as "morons"
23  and "stupid" (Docket No. 23-6 at 41).  Mr. Camacho's abusive behavior mainly took place during
24  the daily conference calls with clients, as stated under oath (Docket 23-6 at 41), and lead plaintiff
25  to take a second leave of absence in March 2006, which later resulted in her resignation in June
26  2006.  It is the court's duty to differentiate between minor criticism and frequent and severe

27

28

**Civil No. 07-1950 (GAG)**

1  harassment through the use of "common sense and an appropriate sensitivity to social context."

2  Redondo, S.E., 394 F.Supp. 2d at 425 (D.P.R. 2005) (citing Oncale v. Sundowner Offshore Serv.,

3  Inc., 523 U.S. 75, 82 (1998)).  Therefore, the court calls attention to the six- month and four-month

4  time range in which the intimidation, insults, and abusive comments occurred.  The court finds that

5  although the isolated events may not seem as severe as the case law esteems, observing "the totality

6  of the circumstances," Zambrana Santos v. Banco Santander de P.R., 363 F. Supp. 2d 56, 65 (D.P.R.

7  2005), would result in a genuine issue of fact as to whether they constitute severe and pervasive

8  harassment.  Also,  a reasonable jury may conclude that this conduct was severely hostile for

9  plaintiff, enough to lead to an extended leave of absence, and enough for a reasonable person to find

10  the same behavior intimidating, insulting, and abusive. "A discriminatorily abusive work

11  environment, even one that does not seriously affect employees' psychological well-being, can and

12  often will detract from employees' job performance, discourage employees from remaining on the

13  job, or keep them from advancing in their careers."  Harris v. Forklift Systems, Inc., 510 U.S. 17,

14  22 (1993).

15      The Supreme Court has repeatedly held that "simple teasing, off-hand comments, and

16  isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms

17  and conditions of employment. . . [this in order to ensure that] Title VII does not become a general

18  civility code."  Smith v. Family Enrichment Center, Inc., 2009 WL 1457973, *5 (M.D. Fla. 2005)

19  (citing Faragher v. City of Boca Raton, 118 S. Court 2275, 2283-284 (1998)) (citations omitted).

20  And, although, some circuit courts find that it is the court's prerogative to determine if the sexual

21  harassment constitutes severe and pervasive treatment sufficient enough to create a hostile work

22  environment, the First Circuit applies the reasonable jury test, whereby it is the jury who decides

23  whether the treatment was sufficiently severe or pervasive.  Rivera-Rodriguez v. Frito Lay Snacks

24  Caribbean, a Division of Pepsico, Inc., 265 F.3d 15, 25 (1st Cir. 2001).  In this case, plaintiff has

25  presented a forecast of evidence that could lead a reasonable jury to decide that she was subjected

26  to a hostile work environment (See Docket No. 23-6 at 2-52).  Therefore, the court finds that a

27

28                                                      7

**Civil No. 07-1950 (GAG)**

1  question of fact remains as to whether the treatment was sufficiently frequent, severe, and pervasive,

2  and it should be left up to a jury to decide if defendant's conduct is actionable as a hostile work

3  environment claim.

4      The court now turns to defendant's argument that plaintiff failed to prove employer liability.

5  An employer's liability for a hostile work environment claim depends on the harasser's employment

6  status relative to the victim's. DHL would be vicariously liable if plaintiff's supervisor created a

7  hostile work environment, but if a co-worker created the hostile work environment, the employer

8  would only be held liable if it was negligent either in discovering or remedying the harassment. See

9  Zayas, 2009 WL 1473506 at *5 (D.P.R. 2009) (citing Torres-Negron v. Merck & Company, Inc.,488

10  F.3d 34, 40 (1st Cir. 2007)).  In order for an employer to defeat vicarious liability for supervisor

11  harassment, it must prove that it exercised "(1) reasonable care to prevent and correct promptly any

12  sexually harassing behavior and (2) that the plaintiff employee unreasonably failed to take advantage

13  of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

14  Id. at 145-46. This defense is raised when the discharge does not involve official actions.

15      In this case, the evidence shows that in June of 2004 plaintiff complained to human resources

16  with regards to Mr. Frías' conduct and that human resources stated that it "would address the issue"

17  (Docket Nos.23-6 at 17 and  23-12 at 1). Then, plaintiff complained again in March 2006 of

18  Mr.Camacho's behavior. Maude Cesari of Human Resources assured plaintiff that she would travel

19  to Puerto Rico in order to deal with the problem (Docket No. 23-21 at 1). After such meeting,

20  Aponte thanked Maude Cesari and told her that there had been positive change (Docket No.23-22

21  at 1).  However, plaintiff resigned in June 2006.  Defendant claims that "[it] addressed plaintiff's

22  concerns [in good faith and] in a timely fashion and took immediate and proper action" (Docket No.

23  24 at 19). Defendant states that after the first complaint, Human Resources found that there was just

24  a personality conflict between Mr. Frías and Aponte, and provided coaching for them both (Docket

25  No. 24 at 19).  Therefore, the court finds that there is a genuine issue of material fact as to whether

26  DHL took reasonable, prompt, and correct action and if plaintiff reasonably failed to take advantage

27

28                                                                8

**Civil No. 07-1950 (GAG)**

1  of it so as to prevent the sexually harassing behavior.  For the aforementioned reasons, the court

2  **DENIES** defendant's motion for summary judgment as to the hostile work environment claim.

3       **C. Supplemental State-Law Claims**

4       Given that plaintiff's hostile work environment claim survived defendant's motion for

5  summary judgment, and that the court understands that Law 17, Law 69, and Law 100 include hostile

6  work environment as an actionable claim, the court **DENIES** defendant's motion for summary

7  judgment as to the state law claims.

8       **IV.    Conclusion**

9       For the abovementioned reasons, the court **GRANTS IN PART** and **DENIES IN PART**

10  defendants' motion for summary judgment (Docket No. 23).

11       **SO ORDERED.**

12       In San Juan, Puerto Rico this 8th day of July 2009.

13                                              *S/Gustavo A. Gelpí*

14                                              GUSTAVO A. GELPI
                                                United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        9