IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JULISSA APONTE RIVERA,** | |
| Plaintiff, | Case No. 07 C 1950 |
| v. | |
| **DHL SOLUTIONS (USA), INC.,** *et al.*, | Hon. Harry D. Leinenweber |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DHL's Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50 and Alternative Motion for Remittitur and or New Trial under Rule 59.  Defendant seeks relief from a jury verdict in favor of Plaintiff for $350,000 for emotional distress suffered due to a hostile work environment.  For the reasons below, DHL's Motion for Judgment as a Matter of Law is denied, and DHL's motion for Remittitur is granted, with a new trial granted only if Plaintiff declines to remit $150,000.

### I.   BACKGROUND

Plaintiff Julissa Aponte ("Aponte") began her career at Defendant DHL ("DHL") in 2000.  By 2003, Ms. Aponte's job title was Logistics Operations Manager, a role in which she supervised employees, oversaw shipments and documentation, and optimized

operations for DHL's clients. In June of 2004, Enrique Frías ("Frias") was named Regional Manager and became Ms. Aponte's supervisor. In the months following this appointment, two major clients of DHL's Puerto Rico operation complained about DHL's performance. Mr. Frías and other management investigated the root causes of the customer problems and implemented plans to address these problems. This process was the basis for much of Plaintiff's first complaint to Human Resources on November 10, 2004. The complaint primarily concerned harsh treatment by Mr. Frías and stressful working conditions although it did mention two discriminatory comments that were later ruled to be time-barred. Shortly after filing this complaint, Plaintiff took a leave of absence that lasted approximately one month.

Also, during November, the position of Program Manager opened up at DHL. Ms. Aponte applied for the position, but testified that during her interview with Mr. Frías he was very aggressive and would not permit her to fully answer questions. Rafael Camacho ("Camacho") was eventually chosen as Program Manager. Ms. Aponte testified that shortly after he began work, Mr. Camacho referred to women in positions of authority as jefecitas ("little bosses") and said he was taught that women were good for household chores. Ms.

Aponte worked with Mr. Camacho for approximately one month before she left work for eleven months on a second leave of absence.

When Ms. Aponte returned to DHL in November of 2005 she was assigned to report to Mr. Camacho.  Mr. Frías and Mr. Camacho confronted Ms. Aponte shortly after her return, asking her why she returned instead of just resigning.  They also said the person who ran the operation "had to have balls."  A co-worker who overheard this exchange testified that Mr. Frías and Mr. Camacho generally spoke to male employees in a softer voice, "appropriately," and would "treat them okay," which was different from how they treated female employees.  Additionally, the jury heard testimony that Mr. Frías said the logistics operation in Puerto Rico had the best year in 2005 because it was being run by a man.

Over the next few months after her return, Mr. Camacho gave Ms. Aponte both a verbal warning and a written warning regarding her performance at work.  In March, Ms. Aponte complained to Human Resources for a second time, stating she felt "discriminated based on gender, overwhelmed, distressed and pressured labor wise."  A Human Resources employee traveled to Puerto Rico in March to resolve this complaint.  Ms. Aponte thanked the employee shortly after this and said she noticed a positive change.  However, Ms. Aponte went on a leave of absence a month later, and resigned from

- 3 -

DHL on June 17. Her resignation letter stated that her resignation was involuntary but necessary due to the gender discrimination she suffered that left her in emotional deterioration.

Plaintiff brought a gender discrimination/hostile work environment claim against Defendant, pursuant to Title VII of the Civil Rights Act of 1934 (the "Title VII claim"), and various laws of the Commonwealth of Puerto Rico (the "Commonwealth claims"), specifically, P.R. Laws Ann. Tit. 29, §§ 155-155m ("Law 17"); P.R. Laws Ann. Tit. 29, §§ 1232-1341 ("Law 69"); and P.R. Laws Ann. Tit. 29, §§ 146-151 ("Law 100"). During trial, Defendant moved for judgment as a matter of law, which was eventually granted for some claims, but denied for the hostile work environment claims. After a four-day trial, the jury rendered a verdict on November 5, 2009 in favor of Plaintiff and awarded her $350,000 in unallocated compensatory damages. On January 25, 2010, this Court allocated $1 of the award to the Title VII claim, and $349,999 to the Commonwealth claims, and applied the mandatory doubling of damages provisions in Law 17, Law 69, and Law 100 to the Commonwealth claims. This resulted in a total award of $699,999.

Defendant renews its Motion for Summary Judgment and asks the Court to set aside the verdict and enter judgment in favor of DHL under Rule 50 of the Federal Rules of Civil Procedure. In the

alternative, Defendant requests a new trial or remittitur under Rule 59 of the Federal Rules of Civil Procedure.

## II. <u>LEGAL STANDARDS</u>

Rule 50 provides that if there was not a legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue, the Court may resolve the issue against the party. FED. R. CIV. PRO. 50. "A jury verdict may not be set aside as a matter of law under Fed. R. Civ. P. 50(b) except on a 'determination that the evidence could lead a reasonable person to only one conclusion.'" *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir., 1993). The evidence is examined in a light most favorable to the non-movant without considering the credibility of witnesses, resolving conflicts in testimony, or evaluating the weight of the evidence. *Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*, 399 F.3d 52, 57 (1st Cir., 2005). The analysis "is weighted toward preservation of the jury verdict," as a motion for judgment as a matter of law should be denied "unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it." *Id.* (citation and quotation marks omitted).

Rule 59 permits courts to grant a new trial or remittitur "if the outcome is against the clear weight of the evidence such that

upholding the verdict will result in a miscarriage of justice." *Monteagudo v. Asociacion de Empleados del Estado Libre Asociado*, 554 F.3d 164, 174 (1st Cir., 2009) (citations and quotation marks omitted). "[A] party seeking remittitur bears a heavy burden of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Rivera v. Turabo Medical Center Partnership*, 415 F.3d 162, 173 (1st Cir., 2005) (citation and quotation marks omitted). The Court does not view evidence in a light most favorable to the non-movant for Rule 59 motions. *Jennings v. Jones*, 587 F.3d 430, 439 (1st Cir., 2009).

### III.  DISCUSSION

The jury found that Plaintiff was subjected to a hostile work environment due to her gender. To succeed in such a claim under Title VII, Plaintiff must have established:

(1)  that [she] is a member of a protected class;

(2)  that [she] was subjected to unwelcome sexual [] harassment;

(3)  that the harassment was based upon sex [];

(4)  that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment;

> (5) that sexually [] objectionable content was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and
>
> (6) that some basis for employer liability has been established.

*O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir., 2001). Courts, and the parties, have agreed that the pertinent substantive law on hostile work environment is essentially the same under Title VII and Commonwealth Law 17, Law 69, and Law 100. *See*, *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 56 (1st Cir., 2000).

Defendant renews its motion for judgment as a matter of law, asking the Court to rule in its favor due to insufficient evidence of a hostile work environment and an affirmative defense. In the alternative, Defendant seeks a new trial or a remittitur of the damages, arguing that the jury award of $350,000 in favor of Plaintiff was against the clear weight of the evidence.

### A. Judgment as a Matter of Law

Defendant argues that the Court should set aside the jury verdict finding it liable primarily because there was insufficient evidence on the third and fourth elements of the hostile work environment claim. This argument fails because there was

sufficient evidence for a reasonable jury to find that the harassment was based on Plaintiff's gender and was sufficiently severe or pervasive so as to create an abusive work environment.

The jury heard testimony that Plaintiff's boss, Mr. Frías, said that the operation had to be run by a man and did, in fact, end up promoting a man, Mr. Camacho, to run the operation. Mr. Camacho on at least two occasions made statements denigrating women, and gave work assignments that Plaintiff felt were unreasonably challenging, resulting in verbal and written reprimands. Plaintiff identified gender discrimination as a source of her unhappiness in her communications with the Human Resources department. Based on this evidence, a reasonable jury could find that the harassment Plaintiff suffered was due to her gender.

There is also sufficient evidence regarding the severe and pervasive nature of the harassment. The jury heard testimony from Ms. Mercado that both Mr. Frías and Mr. Camacho addressed male employees "appropriately" and would "treat them okay," which was different than their treatment of female employees. Such testimony suggests a pervasive nature to the harassment as it would affect all of Plaintiff's interactions with her supervisors. The jury also saw the resignation letter from Plaintiff which specifically cited gender discrimination as the reason she felt forced to

resign.  A reasonable jury could find that this letter, viewed amongst all the other evidence, demonstrated the harassment was severe enough to create an abusive working environment.

Defendant also argues that judgment as a matter of law is warranted because it established a successful *Faragher* affirmative defense.  This defense shields an employer from liability if the employer exercised reasonable care to prevent and correct harassment, and the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  A reasonable jury could find that Defendant failed to establish either of the necessary elements.  Defendant had a complaint policy in place and Human Resources employees responded to both of Plaintiff's complaints.  However, a reasonable jury could find Defendant did not act with "reasonable care" in regards to this policy if it was ineffective in remedying harassment.  Based on the evidence at trial, a reasonable jury could find that the process merely documented the complaint and superficially reviewed it, rather than correcting the problematic behavior.  Alternatively, a reasonable jury could find that Plaintiff actually took advantage of this process when they heard testimony that she at least twice used the formal complaint process to end harassment.

Given that the jury's verdict is supported by sufficient evidence in each of these areas, the jury's verdict stands.

**B. New Trial**

Rule 59 motions rely more on the discretion of the judge than Rule 50 motions, and therefore permit a more comprehensive review of the nature of the evidence. *Jennings v. Jones*, 587 F.3d 430, 438 (1st Cir., 2009). However, "when an argument that the evidence was insufficient forms the basis of a motion for new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law." *Lama v. Borras*, 16 F.3d 473, 477 (1st Cir., 1994).

Ruling on this motion requires a brief second review of the evidence, this time weighing it and not viewing it in a light most favorable to the verdict. *See, Jennings*, 587 F.3d at 439. While reasonable juries could disagree regarding the outcome of this case, that is the not the standard by which a motion for a new trial is considered. Instead, the question is whether the verdict is against the clear weight of the evidence. In this case, the clear weight of the evidence does not favor a finding contrary to the verdict. Plaintiff's two immediate supervisors both made remarks that could be interpreted as disparaging the ability of

females to manage in the workplace. This interpretation becomes more reasonable in light of Ms. Mercado's testimony that female employees were not treated as well as male employees in the workplace. With this evidence in mind, the heavy workload, reprimands, and treatment Plaintiff suffered can support the verdict of a hostile work environment based on Plaintiff's gender.

Defendant further claims that a new trial is warranted due to the successful *Faragher* affirmative defense, prejudicial evidentiary rulings, and improper jury instructions. The jury's denial of the *Faragher* affirmative defense was not against the clear weight of the evidence as the Plaintiff appeared to act reasonably and the outcome of the process suggests that Defendant may not have used reasonable care in creating a policy to correct harassment. In regards to the evidentiary ruling and jury instruction claims, Defendant has not pointed to sufficient evidence suggesting any substantial errors such that the Defendant was prejudiced or the verdict ends up being a miscarriage of justice. Plaintiff was permitted to refresh her recollection on the stand, and even if admitted in error the evidence was not particularly prejudicial to Defendant as it merely set out Plaintiff's performance before the time of the harassment. The jury instructions were also proper, and when combined with the oral

instructions made it clear what evidence was appropriate to rely on in reaching a verdict.

The evidence needs to suggest error or point to a finding of no liability for Defendant so strongly that "upholding the verdict will result in a miscarriage of justice." *Monteagudo*, 554 F.3d at 174. In terms of liability, that has not happened in this case.

### C.  Remittitur

The jury found for Plaintiff in the amount of $350,000 solely for emotional distress suffered due to a hostile work environment. While emotional damages are "notoriously difficult to quantify," they are not immune from review. *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1484 (1st Cir., 1994). Damages of $350,000 are grossly disproportionate to the injury established by evidence at trial, and a reduction to $200,000 is appropriate.

While the evidence produced at trial regarding Defendant's liability for a hostile work environment was sufficient, similar evidence is lacking to support the damages awarded. The jury heard testimony regarding comments made to Plaintiff, the harsh manner in which she was addressed at times, unreasonable work expectations, reprimands, and the general situation she endured at work. Although this evidence is only circumstantial to damages, a

reasonable jury can infer to some extent the emotional distress Plaintiff may have suffered due to these events.

More direct evidence heard by the jury included Plaintiff's leaves of absence, statements to Human Resources, mood changes, "emotional deterioration," and letter of resignation.  Each piece of evidence supports that Plaintiff was experiencing emotional distress.  However, the source of the emotional distress in each case is, at best, mixed.  Plaintiff experienced distress due to mental health issues, physical ailments, and general work stress unrelated to her gender over the same time period as the hostile work environment.  Plaintiff went on a leave of absence and began treatment with a psychiatrist before Mr. Camacho was even hired, and this leave preceded most of the events used as evidence of a hostile work environment.  Plaintiff testified that her psychiatrist opined that Plaintiff's emotional condition began before the offending conduct, and worsened because of her physical ailments.  Plaintiff also testified that a significant reason for her ten-month leave of absence was a back problem, not an emotional condition.  Other evidence demonstrated that Defendant's business was expanding rapidly during this time period and work conditions were stressful for much of the workforce.  This stress was

heightened after major customers made harsh complaints demanding better performance from the Puerto Rico operations.

Economic damages were not part of this verdict as claims for failure to promote, front pay, back pay, and constructive discharge were all dismissed or excluded from presentation to the jury. Plaintiff's evidence concerning her nearly year-long period of unemployment can be used to infer the amount of emotional distress she suffered due to the hostile work environment, but cannot form the basis for lost income damages. Even used in this manner the evidence is questionable, as Plaintiff was gainfully employed for the two months directly following her resignation and only after this job was she unemployed for a year.

Plaintiff offered little evidence on emotional distress *due* to the hostile work environment. This paucity of evidence is problematic only because of the magnitude of the award. While a lesser award could be maintained on the evidence presented, the award as it stands is "grossly disproportionate to any injury established by the evidence." *Id.* at 1484. Plaintiff did not introduce any testimony by a medical expert opining on Plaintiff's mental or emotional condition. Such testimony is not necessary for the recovery of emotional damages, but it is relevant to the amount of the award, particularly when determining if an award is grossly

excessive. *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 47 (1st Cir., 2009); *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 35 (1st Cir., 1999). Plaintiff did visit a psychiatrist during her first leave of absence, but did not visit him once during the last six months of her employment with Defendant. This lack of medical treatment for much of the time period in question, when Plaintiff had already selected and used a psychiatrist, also cuts against a finding that she was in tremendous emotional distress. *See Koster*, 181 F.3d at 36. This is particularly true when she chose not to follow her own psychiatrist's instructions to visit on a monthly basis.

Plaintiff presented no notable evidence of outward manifestations of emotional distress. While such evidence is not necessary to sustain an emotional distress award, courts have routinely cited such manifestations in determining the proper award for emotional distress in the context of employment discrimination and harassment. *See, Monteagudo*, 554 F.3d at 174 ($333,000 award; suffered for months, "wept every evening," depressed, unable to sleep); *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 103 (1st Cir., 2006) (insomnia, depression, nervous breakdown); *Rodriguez-Torres*, 399 F.3d at 64 ($250,000 award; marriage suffered, "deep depression which lasted for quite some time");

- 15 -

*O'Rourke v. City of Providence*, 235 F.3d 713, 733 (1st Cir., 2001) ($275,000 award; uncontrollable shaking, insomnia, weight gain, wouldn't leave house, unable to function); *Koster*, 181 F.3d at 36 (award reduced from $716,000 to $250,000; insomnia, heartburn, family life suffered); *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 724 (1st Cir., 1994) (award reduced from $150,000 to $37,500; stripped of "livelihood and dignity," humiliated, driven into bankruptcy).

Plaintiff also presented no evidence of long term depression or medical treatment, another category of evidence which is not necessary to sustain damages but is often examined by courts in reviewing awards. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 143-144 (1st Cir., 2009) (severe emotional distress five years later); *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 103 (1st Cir., 2006) (extended psychological treatment); *Koster*, 181 F.3d at 36 (finding no long-term depression or incapacitation). In fact, Plaintiff was able to get a job shortly after resigning, and another job a year later. A review of the evidence in the present case reveals that little was shown to the jury to support damages for emotional distress.

In assessing a remittitur, the Court does not reduce the damages to conform to its own valuation, but instead reduces the

amount according to the maximum recovery rule. *See, Koster*, 181 F.3d at 36. The maximum recovery rule provides that damages should be remitted to the maximum amount that is supported by the evidence. *Marchant v. Dayton Tire & Rubber Co.*, 836 F.2d 695, 704 (1st Cir., 1988). The evidence in the present case dictates this decision, but the above examination of other cases is useful in matching a maximum award to the nature of the evidence presented. *See Koster*, 181 F.3d at 36; *see also Monteagudo*, 554 F.3d at 175.

In the present case, Plaintiff laid out evidence of the offending conduct before the jury. The Plaintiff's e-mails, conduct during the Human Resources interventions, and resignation letter substantiated the impact of this conduct on Plaintiff's emotional state. Her complaints regarding her treatment, and reasons for resignation, illustrate that she suffered from emotional distress, but the lack of other evidence discussed above cuts against a finding of $350,000 of damages. The jury heard evidence that Plaintiff felt extremely stressed due to many working conditions unrelated to gender discrimination, including rapidly evolving work procedures, heavy workload for the entire Puerto Rico operations, and client complaints directed at her specifically. These factors may have contributed to Plaintiff's emotional distress, but should not have been included in the award if they do

not stem from Defendant's discriminatory conduct.  When comparing the evidence in the present case to the above cases, the Plaintiff offered the jury less evidence of damages than those cases which ended with awards in the range of $250,000 to $350,000.

The evidence presented in this case supports an award of $200,000 for emotional distress, which results in a remittitur of $150,000.  This award may be generous but that is not the controlling test.  *See Monteagudo*, 554 F.3d at 175.  The award has been reduced to the maximum amount that is sustained by the evidence such that the award does not shock the conscience of the Court and result in a miscarriage of justice.  In light of this Court's January 25, 2010 Opinion, $1 of this award would be to the Commonwealth claims should the Plaintiff accept the Remittitur. The damages for the Commonwealth claims are doubled pursuant to Law 17, Law 69, and Law 100, resulting in a total award of $399,999 after the Remittitur.  Further, the January 25, 2010 Opinion entitled Plaintiff to recover attorneys' fees from Defendant under the Law 100 claim.  These fees are calculated as 25% of the base compensation award of the Commonwealth claims, $199,999, entitling Plaintiff to $49,999.75 in fees after the Remittitur.

### IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

    1.    Defendant's Motion for Judgment as a matter of law under Rule 50 is denied.

    2.    Defendant's Motion for a New Trial or Remittitur under Rule 59 is granted as to a Remittitur, with damages remitted by $150,000, resulting in an award of $399,999 after doubling and attorney's fees of $49,999.75, a total of $449,998.75.

    3.    Plaintiff has until March 29, 2010 to accept the Remittitur, whereupon judgment would be entered, or decline the Remittitur, whereupon the Court would order a new trial solely on the issue of damages for emotional distress.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

**DATE:** 2/26/2010